# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PERE MARQUETTE HOTEL PARTNERS, L.L.C.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-5921** |
| **UNITED STATES OF AMERICA, ET AL** | **SECTION "K"(2)** |

## ORDER AND OPINION

Before the Court is a "Motion for Dismissal Under Rule 12(b)(6)(Failure to State a Claim)" filed on behalf of defendant CSX Transportation, Inc. ("CSX Inc. ") (Doc. 7). Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, GRANTS the motion.

1. BACKGROUND

Plaintiff Pere Marquette Hotel Partners, L.L.C. ("Pere Marquette") owns the property located at 817 Common Street in New Orleans, Louisiana. The Common Street property sustained damage as a result of Hurricane Katrina and the failure of the levees which resulted in catastrophic flooding in the Greater New Orleans Metropolitan area. Pere Marquette filed suit against a number of defendants,[1] including CSX, Inc. and its parent company CSX Corporation. The allegations against the CSX, Inc. state:

---

[1] Plaintiffs also named as defendants: United States of America, Board of Commissioners of the Orleans Levee District, Board of Commissioners of the East Jefferson Levee District, Sewerage and Water Board of New Orleans, St. Paul Fire & Marine Insurance Company, National Union Fire Insurance Company of Pittsburgh, Board of Commissioners for the Port of New Orleans, and The Public Belt Railroad Commission for the City of New Orleans.

97.

On or about September 11, 2004, a New Orleans Public Railroad Train derailment caused a thirty-two and a half foot wide gap in Floodgate W-30, which is part of the floodwall system situated immediately west of the Industrial Canal.

98.

On December 14, 2004, PBR paid OLD $427,387.96, the full estimated cost of the reconstruction of Floodgate W-3 [sic]. On information and belief, both PBR and OLD failed to assure these repairs were made before the August 2005 catastrophe giving rise to this action, resulting in extensive damage to Plaintiff's property.

99.

Further, upon information and belief CSX Corp. and/or CSX, Inc. (collectively "CSX") designed and constructed a railroad crossing at or near the Industrial Canal's flood protection structures. In doing so, CSX utilized highly erodible, lightweight, and/or porous material, including, but not limited to, "shell sand" and gravel, which caused CSX's structure to be significantly weaker than the surrounding flood protection structures. Upon information and belief, CSX also failed to install a "sheet pile cutoff" or similar device to prevent or limit erosion of its structure. Indeed, CSX could have prevented the failure of its structure at minimal cost by installing concrete "sheet pads" or other erosion protection devices at the base of the I-walls of the Industrial Canal.

. . .

141.

The Corps, PNO, CSX, and PBR had a legal responsibility and duty to Plaintiff to cause, allow, and/or conduct the design and construction of the levees and flood walls of the Industrial Canal in a manner that would not compromise the safety of the canal's levee/flood wall system. As discussed *supra*, the Corps, PNO, CSX, and PBR knew or should have known of the deficiencies in the design, construction, and maintenance of the Industrial Canal.

. . .

PRAYER FOR RELIEF

. . . .

    (7) The Corps, CSX, PBR and PNO be held liable for all of Plaintiff's damages caused by their negligence in the design, construction, and maintenance of the Industrial Canal, . . ..

Doc. 1.

CSX, Inc. seeks to dismiss plaintiff's state law negligence claims against it asserting that it had no duty to protect the plaintiffs from flooding. Additionally, CSX, Inc. contends that even if it were negligent in a manner causing damage to the plaintiff, that plaintiff's claims must nonetheless be dismissed because the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. §10101, *et seq.* ("ICCTA") preempt plaintiff's state law claims.

LAW AND ANALYSIS

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank*, *N.A.,* 781 F.2d 440, 442 (5th Cir. 1980). In *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969 (2007), the Supreme Court "retired" the *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), standard for analyzing a motion to dismiss under Rule 12(b)(6) which held that a district court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Noting that the *Conley* pleading standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard," the Supreme Court announced that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the

complaint. *Id.* at 563, 127 S.Ct. at 1969. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In Re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965 (internal citations omitted). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997) quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969).

a) Duty

The Court has previously granted a motion to dismiss substantially similar allegations against CSX Inc. brought by residents and citizens of Orleans Parish damaged by flooding following Hurricane Katrina and the failure of the levees concluding, after a thorough analysis of "duty" under Louisiana law, that CSX Inc. had no general duty under Louisiana law to protect those plaintiffs from flooding. *In Re: Katrina Canal Breaches Consolidated Litigation*, No. 05-5182 (E.D. La. December 27, 2007), Doc. 9856. The allegations against CSX, Inc. in this case cannot be legally distinguished from those in the prior case. Because the Court's prior analysis of "duty" in the context of Louisiana Civil Code Article 2315[2] is equally applicable in this case to plaintiff's claims brought pursuant to Article 2315, the Court grants CSX, Inc.'s motion with respect to state law

---

[2] Article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

4

negligence claims brought pursuant to Civil Code Article 2315 for failure to protect plaintiff from flooding.

Plaintiff also urges that Louisiana Civil Code Article 2317.1[3] and La. Rev. Stat. 38:§223[4] impose a duty on CSX, Inc. with respect to their railroad tracks and the design and construction of the roadbed and other areas of the track.[5] No extensive analysis of these contentions is necessary. Even assuming that those provisions of Louisiana law impose a duty on CSX, Inc., as urged by

---

[3]Article 2317.1 provides in pertinent part:
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice or defect, only upon a showing that he knew, or in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

[4] The statute provides:
> No person shall:
>
> Place or cause to be placed upon or within six feet of any part of the levees fronting any waterway subject to the control or surveillance of police juries, levee boards, municipal corporations, or other authorized boards or departments any object, material, or matter of any kind or character which obstructs or interferes with the safety of the levees or is an obstacle to the inspection, construction, maintenance, or repair of any levee; or place or cause to be placed any object, structure, material, or matter of any kind or character upon any part of any land which the state or any agency or subdivision thereof may own or acquire by deed, lease, servitude, charge, or otherwise, and through its authorized representative, may donate, grant, or otherwise convey to the United States right-of-way, easements, or other servitudes for the construction, improvement, or maintenance of any flood-control structures or natural or other waterway, which may obstruct or interfere with the improvement or maintenance of such waterway or use of the land for flood-control purposes.

5

plaintiff, for the reasons discussed hereinafter, any state law negligence claims arising from a breach of those duties would be preempted by ICCTA.

### b) Preemption

CSX, Inc. contends that even if it had a duty to protect plaintiff from flooding that plaintiff's claims must be dismissed because any state law claims flowing from that duty are preempted by the ICCTA. The Supremacy Clause of the Constitution is the foundation of the federal preemption doctrine. The Supremacy Clause states in pertinent part that "the Laws of the United States . . . shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl.2. The Supremacy Clause permits Congress to preempt state law in the legitimate exercise of its legislative authority. *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. 355, 369, 106 S. Ct. 1890, 1989-99, 90 L.Ed.2d 369 (1986).

Federal preemption occurs when Congress expressly prohibits state regulation and the intent of Congress to preempt state law is clear and explicit, when Congress pervasively occupies a field of regulation and thereby implicitly leaves no room for state regulation, or when state law actually conflicts with federal law. *See Friberg v. Kansas City Southern Railway Company*, 276 F.3d 439, 442 (5th Cir. 2001), citing *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990). Regardless of the type of preemption urged, the preemption analysis "starts with the assumption that the historic police powers of the States are not to be superseded by . . . Federal Act unless that is the clear and manifest purpose of Congress. Accordingly, [t]he purpose of Congress is the ultimate touchstone of pre-emption analysis." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407. (internal quotation and citation

omitted). To put it another way, "[t]he critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana Public Service Commission v. Federal Communications Commission*, 476 U.S. at 369, 106 S.Ct. at 1899.

With a goal of deregulating the rail transportation industry, ICCTA abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board. ICCTA granted the Surface Transportation Board exclusive jurisdiction over:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2) the construction, acquisition, operation, abandonment, or discontinuance or spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State.

49 U.S.C. §10501(b). ICCTA includes an express preemption provision which states that "[e]xcept as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are **exclusive** and **preempt** the remedies provided under Federal or State law." 49 U.S.C. §10501(b)(2) (emphasis added).

"It is difficult to imagine a broader statement of Congress's intent to preempt state regulatory authority over railroad operations." *CSX Transportation, Inc. v. Georgia Public Service Commission*, 944 F.Supp. 1573, 1581 (N.D. Ga. 1996). The preemption provision of ICCTA "is so certain and unambiguous as to preclude any need to look beyond that language for congressional intent." *Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 443. Nevertheless, the reach of the preemption provision is not unlimited. ICCTA's preemption of state law remedies is restricted to those "with respect to regulation of rail transportation." 49 U.S.C. §10501(b)(2).

7

Plaintiff's complaint challenges CSX, Inc.'s design and construction of "a railroad crossing at or near the Industrial Canal's flood protection structures."  In their "Opposition to CSX Transportation, Inc.'s Motion to Dismiss" plaintiff states that its "claims do not arise from the negligent design and construction of railroad crossings, **which is the intersection of a railway line with a road, street, or bridge.** Rather, plaintiffs' claims arise in part from the negligent design and construction of the roadbed and other areas of the track that caused flooding to their property." *In Re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182,  Doc. 11194, p. 11.[6]  The preemption analysis is the same for state law claims arising from negligent design and construction of railroad crossings and from negligent design and construction of roadbeds and other areas of track.  The  relevant issue is  whether a state law claim challenging the design and construction of a railroad crossing, railroad tracks, or roadbed  involves  a state law remedy "with respect to regulation of rail transportation."  ICCTA broadly defines "transportation" to include:

> (A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use, and
>
> (B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange or passengers and property.

49 U.S.C. §10102(9). There can be no doubt that  a railroad crossing, railroad tracks, and a roadbed for track  constitute "property . . . . related to the movement or passengers or property . . . by rail."  Therefore, ICCTA's "transportation" criterion is satisfied.

---

[6] Plaintiff's "Opposition to CSX Transportation, Inc.'s Motion for Dismissal" (Doc. 18) adopts and incorporates Docment 11194 filed in   *In Re Katrina Canal Breaches Consolidated Litigation*, No. 05-4182.

Because ICCTA does not define "regulation," the Court must look elsewhere to determine its meaning. "Regulation" has been defined as the "act or process of controlling by rule or restriction." Blacks Law Dictionary (8th ed. 2004). The application of state law negligence principles to assess and evaluate the suitability of the design and construction of a railroad crossing, railroad tracks, and roadbed for railroad tracks qualifies as an attempt at state law "regulation" in respect to rail transportation.

In analyzing the preemptive scope of ICCTA, the Surface Transportation Board has held that:

> [T]he courts have found two broad categories of state and local actions to be preempted regardless of the context or rationale for the action. The first is any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized.
>
> Second, there can be no state or local regulation of matters directly regulated by the Board - such as the construction, operation or abandonment of rail lines . . ..

*CSX Transportation, Inc.-Petition for Declaratory Order,* 2005 WL 1024490, at *2-*4 (Surface Transportation Bd. May 3, 2005) (citations and footnote omitted). The design and construction of a railroad crossing and the roadbed for tracks is necessarily inextricably intertwined with the design and construction of the railroad tracks located at the crossing. Additionally, the design and construction of the railroad crossing, tracks, and roadbed relates directly to CSX, Inc.'s rail activity. ICCTA makes it clear that the Surface Transportation Board has exclusive jurisdiction over the "construction" of railroad tracks. Thus, the plaintiff's claim that CSX, Inc. negligently designed and constructed the railroad crossing, tracks, and roadbed is preempted.

The Court's analysis is consistent with that applied in other cases that have concluded that

9

ICCTA preempts state law negligence claims. In *Maynard v. CSX Transportation, Inc.*, 360 F.Supp. 836 (E.D. Ky. 2004). plaintiffs, individuals who owned land in the immediate vicinity of a side track located on property owned by a railroad, brought state law claims related to the use of the side track. Among other things, plaintiffs urged that the railroad's use of a side track blocked access to their property for excessive time periods, and that the railroad by virtue of the side track negligently permitted drainage from the adjoining properties to escape onto their property thereby diminishing the value of their property. The district court concluded that "[b]ecause it is CSX's construction and operation of the side tracks . . . which gave rise to Plaintiffs' claims, those claims are expressly preempted by the ICCTA." *Id.* at 842. *See also Friberg v. Kansas City Southern Railway Company*, 267 F.3d at 444 ( plaintiffs's state law negligence claims arising from railroad's alleged obstruction of a primary road due to its use of a side track preempted by ICCTA).

The Court acknowledges that the courts have not been unanimous in concluding that all state law claims urged against a railroad are preempted. Where plaintiffs have asserted against a railroad a state law claim that does not directly relate to railroad operations, the state law claim has been found to not be preempted. In *Rushing v. Kansas City Southern Railway, Co.,* 194 F.Supp.2d 493 (S.D. Miss. 2001), plaintiffs, landowners living in close proximity to a railroad switching station, alleged that an earthen berm constructed on the grounds of the switching station had damaged their property because the berm caused pooling of rainwater on the plaintiff's property. Relying upon state nuisance and negligence law, plaintiffs sought an order requiring the defendant railroad to modify the berm. The defendant railroad admitted that it had constructed the berm "to reflect and absorb noise emissions originating from the rail yard." *Id.* at 501. The district court concluded that ICCTA did not preempt the plaintiffs' state law claim, in part, because the design and construction

of the berm, did not "directly relate to the manner in which the Defendant conducts its switching operations." *Id.* Here however, unlike in *Rushing,* plaintiffs' claims of negligence resulting from the design and construction of the railroad crossing relate directly to CSXT's operations at the railroad crossing. Thus, this case is readily distinguished from *Rushing*.

This case can also be distinguished from *Emerson v. Kansas City So. Railway*, 503 F.3d 1126, 1131 (10th Cir. 2007), cited by plaintiff in support of its contention that its claims are not preempted by ICCTA. In *Emerson* the plaintiffs brought a state law claim seeking to recover damages resulting from flooding alleged to have been caused as a result of the railroad discarding old rail road ties into a wastewater ditch adjacent to the tracks and failing to maintain the ditch. The *Emerson* Court concluded that "[t]hese acts (or failure to act) are not instrumentalities related to the movement of passengers or property. Rather, they are possibly tortious acts committed by a landowner who happens to be a railroad company. Because these acts or omission are not 'transportation' under §10102(9), the ICCTA does not expressly preempt the generally applicable state common law governing the Railroad's disposal of waste and maintenance of the ditch. " *Id.* at 1130. Unlike the railroad"s acts in *Emerson*, CSX, Inc's allegedly negligent acts, i.e., the design and construction of a railroad crossing, roadbed, and railroad tracks, is integrally related to "transportation." The claim is preempted.

Additionally, mindful of its obligation to construe a complaint broadly in the light most favorable to the plaintiff, the Court notes that even if plaintiff's claim is construed as one to enforce the state's traditional police power to protect the health and safety of its citizens, the claim is preempted by ICCTA. "Congress made no blanket exception for a state's police power when describing the ICCTA's preemption scope." *A&W Properties, Inc. v. The Kansas City Southern*

11

*Railway Company,* 200 S.W.3d 342, 347 (Tex. App. 2006). "[W]here cases have made reference to a state's police power in the course of ICCTA preemption analysis, the premise for the discussion is inevitably that the state retains its traditional police power in terms of public health and safety *except* where the state's actions regulate rail transportation." *Id.* (collecting cases).

Accordingly, CSX, Inc. 's motion to dismiss is GRANTED.

New Orleans, Louisiana this 9th day of March, 2010.

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE